UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 115 |
| | ) | Hon. Ronald A. Guzman |
| MARK POLCHAN and | ) | |
| SAMUEL VOLPENDESTO | ) | |
| | ) | |

### POLCHAN'S RESPONSE TO THE GOVERNMENT'S MOTION SEEKING DISQUALIFICATION OF DEFENSE COUNSEL

NOW COMES the Defendant MARK POLCHAN, through his attorneys Alexander Salerno and Damon Cheronis, opposing disqualification of Mr. Salerno as defense counsel. In support of this Motion, POLCHAN states the following:

### I. INTRODUCTION

The Government has moved to disqualify Mr. Salerno as defense counsel for Mark Polchan in the above captioned matter. In support of this motion, the Government cites potential "conflicts" stemming from Mr. Salerno's prior representation of CW 4, co-defendant Volpendesto, and Outfit Member A. However, the Government's allegations grossly exaggerate the nature of the alleged "conflicts" and, in any event, do not outweigh Polchan's constitutional right to the counsel of his choice. Moreover, Polchan and his counsel have taken extensive efforts to cure any potential conflicts. Therefore, the Government's motion for disqualification should be denied.

### II. ARGUMENT

The Sixth Amendment guarantees a criminal defendant the right to retained counsel of his own choosing. *Wheat v. U.S.*, 486 U.S. 153, 158-59, 108 S.Ct. 1692, 1696-

1697 (1988); *U.S. v. Gonzalez–Lopez*, 528 U.S. 140, 146, 126 S.Ct. 2557, 2562 (2006). As a result, the defendant starts with a presumption favoring his or her right to chosen counsel. *Id; see also Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) (recognizing that disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary"). The Government can only defeat this presumption by showing that representation by the chosen counsel poses either an actual conflict of interest, or a serious potential for such a conflict. *Wheat*, 486 U.S. at 164. It is an essential component of the Sixth Amendment right to counsel that the individual has the right to an attorney of his own choosing, <u>Powell v. Alabama</u>, 287 U.S. 45, 33 (1932). "The Sixth Amendment right to counsel includes . . . the right of any accused . . . to be represented by an attorney of his own choosing."; *United States v. Seale*, 461 F.2d 345, 358 (7th Cir. 1972) ("If the Sixth Amendment right to effective assistance of counsel means anything, it certainly means that it is the actual choice of the defendant which deserves consideration."); *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981), <u>cert. denied</u>, 454 U.S. 1162 (1982). In the instant case, the Government is woefully deficient in meeting this burden, and, thus, their motion for disqualification should be denied.

      A.     *Polchan has knowingly and intelligently waived any conflict.*

Polchan has sought independent counsel regarding Mr. Salerno's representation, and has waived all potential conflicts. Specifically, Polchan met with William S. Stanton, who is unaffiliated with Mr. Salerno and/or Mr. Cheronis. Mr. Stanton advised Polchan regarding: (a) these alleged "conflicts" and the potential consequences/implications relating thereto; (b) possible sentencing considerations he could receive if he cooperated with the Government; and (c) the availability and potential

success of various trial strategies. *See* Affidavit of Stanton, attached as <u>Exhibit A</u>.[1] In addition, Mr. Stanton advised Mr. Polchan that should he wish to cooperate in the future, he could do so without consulting Mr. Salerno or Mr. Cheronis and consult directly with Mr. Stanton. Having been independently advised of these matters, Polchan has waived any conflict and wishes to move forward with Mr. Salerno and Mr. Cheronis as his defense counsel. (See affidavit of Polchan attached as Exhibit "B") *See U.S. v. O'Malley*, 786 F.2d 786, 790 (7th Cir. 1986) ("A waiver is sufficient if it was made knowingly and intelligently, that is to say, if it was made with sufficient awareness of the relevant circumstances and likely consequences"); *see also U.S. v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) ("Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government"). Like other constitutional rights, the right to conflict free counsel can be knowingly and intelligently waived by a defendant. <u>See Holloway v. Arkansas</u>, 435 U.S. 475, 483 n.5 (1978); <u>Uniterd States v. Krebs</u>, 788 F.2d 1166, 1172-73 (6th Cir. 1986); <u>United States v. Bradshaw</u>, 719 F.2d 907 (7th Cir. 1983).

No countervailing points outweigh the defendant's constitutional right to counsel of choice. Denying Mr. Polchan his right to counsel of choice in this case would amount to reversible error, even in the absence of a specific showing of prejudice. <u>See Linton v. Perini</u>, 656 F.2d 207, 210 (6th Cir. 1981), <u>cert. denied</u>, 454 U.S. 1162 (1982); <u>Gandy v. Alabama</u>, 569 F.2d 1318, 1326 (5th Cir. 1978); <u>Releford v. United States</u>, 288 F.2d 298, 302 (9th Cir. 1961); <u>Lee v. United States</u>, 235 F.2d 219, 221 (D.C. Cir. 1956). Given the

---

[1] In addition, Mr. Cheronis has and will continue to advise the Defendant regarding all matters relevant to his case. As Mr. Cheronis has not previously represented Mr. Volpendesto or Outfit Member A, his advice should also viewed as "independent" counsel.

waivers executed by the defendant, the advice of Mr. Cheronis and Mr. Stanton, the agreement of Attorney Salerno to not disclose any private matters[2] and the presumption in favor of counsel of choice, there is no legally sound basis to disqualify Mr. Polchan's counsel.

    B.    The "conflict" arising from Mr. Salerno's prior representation of CW4 and Volpendesto is speculative and can be resolved by measures short of disqualification.

At this point, the Government has not brought any charges that relate to Mr. Salerno's prior representation of CW4. *See* Government's Motion for Disqualification, p. 6 (the government *anticipates* bringing additional charges . . . that will encompass the offense conduct that was the subject of Salerno's prior representation of CW4) (emphasis added). As conceded by the Government, Mr. Salerno's representation of CW4 involved state criminal charges, not included in the original indictment. *See id* at 6, 17. Thus any alleged "conflict" is, at this point, merely speculative and therefore should not serve as a valid basis for disqualification. Should these charges materialize, however, the measures employed by defense counsel are adequate to insure that no conflict will arise.

Moreover, the Government also argues that a conflict exists because CW4 may be cross-examined about his criminal history. However, an individual's criminal history is generally a matter of public record. The Government has not shown how CW4's situation is different from any other witness and/or why Mr. Salerno's representation would unduly prejudice CW4, Polchan, and/or the Government.

Finally, and perhaps most significantly, CW4 will be cross-examined by Mr. Cheronis, who has never met or represented CW4. Mr. Salerno will not relate to Mr. Cheronis any privileged or confidential information in the preparation of this cross-examination. *See* Affidavit of Damon M. Cheronis, attached as <u>Exhibit C</u> and Affidavit of Alexander Salerno, attached as <u>Exhibit D</u>. Mr. Salerno and Mr. Cheronis are fully aware that the rules of professional conduct prohibit them from doing so, and therefore, all confidential communications between CW 4 and Mr. Salerno will remain confidential. "As the Seventh Circuit has expressly sanctioned this court's decision to remedy a similar conflict of interest in just this manner having another attorney in the same firm who is screened off from any confidential information conduct the cross-examination of the witness at issue the court prefers to follow the same course here. Utilization of backup counsel avoids the possibility of counsel cross-examining a client and using confidential information." *See Micke*, 859 F.2d 473, 480-81 (7th Cir. 1988). In fact, Attorney Salerno himself has used back-up counsel on other cases on two occasions without being subject to motion for disqualification.

The same arrangements will be made if Volpendesto decides to testify at trial. Mr. Cheronis will handle the examination, and any privileged information Mr. Salerno may have learned while representing him at the pre-indictment stages will not be used by or relayed to Mr. Cheronis.

In arguing for disqualification, however, the Government cites *United States v. Algee*. 309 F.3d 1011 (7th Cir. 2002). Their reliance is misplaced. In *Algee*, the district court originally denied the Government's motion to disqualify and reconsidered its decision only after it became aware of allegations that Christenson (the disqualified attorney) had received cocaine in exchange for legal services. *Id*. at 1013. Obviously in that situation there was a palpable potential conflict due to the attorney's own involvement in the drug conspiracy. In the instant case, however, Mr. Salerno is no way implicated in any illegal conduct and/or involved in any alleged conspiracy. Moreover, in *Algee*, the Seventh Circuit's main concern was that Christenson could not effectively cross-examine the Government's key witnesses because he had formerly represented them. As previously discussed, however, in the instant case the witnesses which pose a potential "conflict" will be cross-examined by Mr. Cheronis, who is and will be completely insulated from any confidential and/or privileged information. Moreover, Mr. Cheronis has no duty of loyalty to CW4,

---

[2] Attorney Salerno does not concede that during his brief representation of Outfit Member "A" and his call on behalf of Mr. Volpendesto he gleaned any information that could actually be used.

Volpendesto, (or Outfit Member A) since he has never represented them in any capacity. As a result of these key-distinguishing characteristics, *Algee* is not controlling and only tangentially relevant.

The case of *United States v. Pizzonia* presents a more analogous set of facts. 415 F.Supp.2d 168 (E.D.N.Y. 2006). In *Pizzonia*, the defendant was charged with participating in a racketeering conspiracy predicated on murder, extortion and loan-sharking. *Id*. at 175. The Government moved to disqualify the defendant's attorney (Corrozo) because of a variety of alleged conflicts, including: (1) defense counsel's prior representation of the Government's "star" witness; (2) defense counsel's prior representation of an unindicted co-conspirator; (3) defense counsel's business and social relationships with members of the crime family implicated in the criminal acts (the Gambino's); and (4) his alleged position as "house counsel" to the Gambino's. *Id*. at 174. The *Pizzonia* court denied the Government's motion and held that although Corrozo had previously represented one government witness and the co-defendant of another cooperator, these conflicts were waivable. *Id*. at 186. Specifically, with respect to Corozzo's representation of the unindicted co-conspirator, the *Pizzonia* court found that his representation in that matter was unrelated to defendant's prosecution and that, although the defendant did "possibly reduce the number of defense strategies [available to him] by continuing to retain defense counsel," he was aware of this fact and could validly waive any conflict that existed. *Id*. at 181-82. The Court also concluded that Corrozo was not acting as "house counsel" to the organized crime family despite financial and social connections, as would warrant counsel's disqualification. *Id*. at 182-86. Finally, the court concluded that defense counsel's cross-examination of a government witness, for whom he had formerly acted as an investigator, would not interfere with the trial or make it appear unfair. *Id*. at 179-80.

As with *Pizzonia*, the Government alleges a variety of potential conflicts stemming from Mr. Salerno's representation of potential witnesses and co-conspirators. However, as in *Pizzonia*, these potential "conflicts" are largely speculative and do not outweigh the Defendant's constitutional right to counsel of his choice. Moreover, the instant case is distinguishable from *Pizzonia* in the extensive curative measures taken by Mr. Salerno, the Defendant, independent attorney Mr. Stanton and Mr. Cheronis. In any event, Polchan has effectively waived the potential for conflict, and therefore, disqualification is unnecessary and improper. And, although the Government asserts that CW4 will not waive any potential conflict, this concern has been ameliorated by Mr. Cheronis, who has no relationship or history whatsoever with CW4.

C.    *Any potential "conflict" stemming from Mr. Salerno's prior limited    representation of Outfit Member A is minimal, at best, and can be cured by Mr.    Cheronis' cross-examination of Outfit Member A at trial.*

The Government alleges that there exists "business relationships" between Outfit Member A and Mr. Salerno, but provides little evidence in support thereof. *See* Government's Motion for Disqualification, p. 2. The Government does not state what these alleged business relationships are, or how they might affect Mr. Salerno's ability to effectively and ethically represent Polchan.

The Government also notes that Mr. Salerno "represented" Outfit Member A and rendered him legal advice during the course of a search with took place in July of 2008. Initially, the Government cannot provide any evidence regarding the content of private conversations between Mr. Salerno and Outfit Member A. Thus their assertion that this was "legal advice" cannot be substantiated. Even assuming, *aguendo*, that Mr. Salerno did have confidential conversations with Outfit Member A at this location, there is no indication that these conversations were in any way related to the instant case or would pose a potential conflict.

Notwithstanding the lack of evidence establishing a potential conflict, Mr. Cheronis will handle any cross-examination of Outfit Member A should he be called to testify. As with Volpendesto and CW4, Mr. Cheronis has never represented Outfit Member A. Mr. Cheronis will be

completed insulated from any information which could place Outfit Member A's right to confidentiality or loyalty in jeopardy.3 (See attached affidavits of Cheronis and Salerno).

As previously discussed, Mr. Cheronis has also advised and will continue to advise Polchan of sentencing recommendations the government could elect to make on his behalf, or other considerations he could be eligible for if he cooperated against Outfit Member A. Polchan has already, however, been advised of such considerations during his previous consultation with Mr.Stanton. In other words, Polchan has and will be advised regarding any and all potential trial strategies and the consequences/advantages of cooperating with the Government by: (1) Mr. Salerno, who's professional ethics require him to do so; (2) Mr. Cheronis, who is completely free from any duty of loyalty and/or confidentiality to CW4, Outfit Member A, or Volpendesto; and (3) Mr. Stanton, who is a wholly unrelated and independent attorney. These extensive efforts have cured any potential conflicts and render disqualification an unduly harsh result.

Therefore, it is evident that Polchan has been fully, independently, and competently advised of any and all potential matters regarding his chosen defense counsel, and has knowingly waived any "conflicts." Thus, the Government's argument that this will affect Polchan's trial strategy is without merit.

D. *The fact that Defense Counsel Salerno and Wanderling office in the same building is of little import and does not create a "conflict" or ethical concern of any kind.*

The Government also raises concerns about Mr. Salerno and Mr. Wanderling's common address and phone number. This is the legal equivalent of the Government including the "kitchen sink" in arguments it is throwing at Polchan in hopes of disqualifying Salerno. However, as the Government is well aware, it is not uncommon for wholly independent attorneys and/or law firms to share a larger office space. As required by the professional rules, Mr. Salerno and Mr. Wanderling maintain separate filing systems, do not share confidential/privileged information with one another, and otherwise operate completely autonomous and distinct practices. As such, no conflict exists with Mr. Wanderling and Mr. Salerno's representation of their respective clients.

## II. CONCLUSION

In sum, Mr. Salerno's representation of Polchan does not pose any ethical concerns or call into question the integrity of the judicial process. Any potential "conflicts" are *de minimis*, will be insulated by Mr. Cheronis examination of Mr. Salerno's former clients, and do not approach the level necessary to deprive Mr. Polchan of his Sixth Amendment right to counsel of his choice. For these reasons, Mr. Polchan asks this Honorable Court to deny the Government's Motion to Disqualify defense counsel Salerno.

s/Alexander M. Salerno
Alexander M. Salerno

Alexander M. Salerno
Attorney at Law
2505 S. Des Plaines Avenue
Des Plaines, Illinois 60546
(708) 443-5400

---

[3] Attorney Salerno has also been tendered an affidavit waiving any potential conflict of representation executed by Outfit Member "A". Said affidavit was secured from Outfit Member "A"'s attorney Terence Gillespie, and is executed by Outfit Member "A" and waives any potential conflict with Attorney Salerno or Attorney Wanderling. The affidavit has not been attached to the motion but can be submitted under seal to the Court and government since Outfit Member "A" has not been identified and is not a party hereto.