UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.   08 CR 115 |
| | ) | Hon.  Ronald A. Guzman |
| MARK POLCHAN and | ) | |
| SAMUEL VOLPENDESTO | ) | |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION SEEKING
DISQUALIFICATION OF DEFENSE COUNSEL DUE TO CONFLICTS
PRESENTED BY THEIR REPRESENTATION OF THE DEFENDANTS**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby submits this reply in support of its motion (the "Motion") to disqualify Alexander Salerno and Edmund Wanderling from ongoing participation in the pending case, due to actual and potential conflicts resulting from their representation of the defendants. In further support of this motion, the government respectfully represents as follows:

**SUMMARY OF ARGUMENT**

Both defendants contend the government has exaggerated the extent of the actual and potential conflicts their attorneys face. On the contrary, as is discussed herein, it is the defendants who have minimized the serious nature of the conflicts posed by Salerno's and Wanderling's continued participation in this case. It is clear that both have provided legal services to Outfit Member A, and both have represented CW4, who is expected to testify for the government. Moreover, neither attorney has provided full disclosure concerning their

ties to Outfit Member A despite the government's suggestion that they do so if they wish to participate in this case.

Moreover, Salerno and Wanderling have not obtained conflict waivers from CW4 – which means their continued participation in this case violates applicable rules of professional conduct and the Local Rules of this Court. Simply put, the defendants in this case do not have a right to select attorneys in violation of applicable ethical and legal rules. *Wheat v. United States*, 486 U.S. 153, 159-61 (1988). While conflict waivers have been signed by the defendants, they were obtained in violation of the Local Rules. This Court should exercise the broad discretion it has in this area and reject the waivers in order to preserve the fairness and integrity of this proceeding – and to protect its judgments from attack on appeal. Salerno and Wanderling serve more than one master; their loyalties are divided and they should be disqualified.

Finally, the conflicts both attorneys face have not and will not be overcome by the introduction of additional attorneys to conduct cross-examination at trial or by cameo appearances by other attorneys who are unfamiliar with this case to discuss potential cooperation with the government. As described herein, Salerno's and Wanderling's conflicts extend beyond merely cross-examining one witness and will infect all aspects of the engagement. The Motion should be granted.

## ARGUMENT

I. **The Defendants Do Not Grasp the Serious Nature of the Conflicts Faced By Their Attorneys.**

Salerno and Wanderling both suggest that the government has exaggerated the nature of the conflicts faced by both attorneys. In fact, the very opposite is true: As discussed below, it appears counsel for both defendants do not fully appreciate the maze of conflicts that has arisen as a result of their participation in this case.

For example, attorney Salerno, in the pleading he has signed on behalf of Polchan, seeks to subtly cast doubt on the fact that he has previously represented Outfit Member A. Specifically, in the Motion, the government drew the Court's attention to the fact that Outfit Member A had previously identified Salerno as his attorney in 2004. Motion at 8. In addition, the government also noted that Salerno acted in a representative capacity during the course of a search of Outfit Member A's house several weeks ago on July 30, 2008 – a search that was conducted as part of the ongoing investigation in this case. *Id.* at 7. Polchan contends that the government "cannot provide any evidence regarding the content of private conversations between Mr. Salerno and Outfit Member A. Thus their assertion that this was 'legal advice' cannot be substantiated." Polchan Resp. at 8.

A more detailed account of the events of July 30, 2008, therefore seems appropriate in order to clarify the nature of counsel's activities that day, in order to ensure there is no lingering question as to whether Salerno has recently provided legal counsel to Outfit Member A in connection with this investigation. On July 30, 2008, after the search of Outfit Member A's residence began, Salerno appeared at Outfit Member A's residence. In

fact, Salerno appeared at the residence before Outfit Member A arrived at the residence. Salerno advised a federal agent that he had received a call from attorney Wanderling, who had asked Salerno to come to Outfit Member A's residence in order to preserve Outfit Member A's interests. Salerno reviewed the warrant issued to search Outfit Member A's residence after his arrival, and asked about the nature of the search. Thereafter, Outfit Member A arrived. Salerno consulted with Outfit Member A several times out of the earshot of agents. At the conclusion of the search, Outfit Member A was provided with an inventory of the search, which Outfit Member A reviewed in the presence of attorney Salerno and agents. Moreover, in connection with the search, an agent asked Outfit Member A to produce his cellular telephone, which was an object included within the scope of the search warrant. As Outfit Member A looked on, Salerno advised that Outfit Member A did not have a cellular telephone in the residence. These facts demonstrate the obvious: Salerno has recently provided legal representation to Outfit Member A.[1]

The manner in which Salerno's prior representation of Volpendesto is described in Polchan's filing is also instructive. Salerno's prior representation of Volpendesto is characterized as "his call on behalf of Mr. Volpendesto," during which Salerno did not glean "any information that could actually be used." Polchan Resp. at 4 n.2. Again, additional

---

[1] On a more general level, Polchan's suggestion that the government must prove Salerno has represented Outfit Member A is problematic. In effect, counsel dares the government to demonstrate that he has provided legal representation to Outfit Member A. This is not a game of hide the ball. Attorneys appearing before a Court when it takes up a conflicts issue have a duty of candor to the tribunal. Interestingly, attorney Salerno has studiously avoided disclosing, as the government has suggested, "any other legal, non-legal or social relationship with Outfit Member A." *See* Motion at 22 n.8.

4

details of Salerno's pre-indictment representation of Volpendesto are necessary for the Court to fully appreciate this conflict. Among other things, Salerno was advised that the government wished to speak to Volpendesto pre-indictment in connection with this investigation, and was advised to inform Volpendesto of this request. It is presumed that in deciding how to respond to this request and other matters pre-indictment on behalf of his client, Salerno at a minimum discussed the nature of the offense under investigation with Volpendesto. Accordingly, Salerno's pre-indictment representation of Volpendesto was more than just a "phone call." *Cf. Analytica, Inc. v. NPD Research*, 708 F.2d 1263, 1268-69 (7th Cir. 1983) (conducting factual inquiry into whether client confidences will be revealed is difficult because the inquiry itself may reveal confidences, and attorneys resisting disqualification have an interest in retaining current client and denying breach of ethical rules).

For his part, Wanderling insists his ties to Outfit Member A and others are of no moment. Wanderling notes he has previously represented Outfit Member A in a criminal case, and has represented Outfit Member A in real estate matters and has acted as a registered agent for corporations which the government has tied to the Outfit. Wanderling also notes his prior representation of Polchan in a criminal case.[2] Further, Wanderling concedes his prior representation of a series of individuals and businesses associated with the Chicago Outfit.

---

[2]   Obviously, this representation provides yet another potential conflict.

Wanderling does not discuss whether he currently represents Outfit Member A on any legal matter, or when the last matter concluded. Tellingly, as noted above, it was Wanderling who summoned Salerno to Outfit Member A's residence several weeks ago – and now Wanderling represents an individual in a position to cooperate against Outfit Member A. As noted above, full disclosure of Wanderling's ties to Outfit Member A should be made; the facts known to date strongly suggest that Wanderling owes responsibilities to "another client or to a third person" that will materially limit his representation of Volpendesto. Rule 1.7(a) of the Illinois Rules of Professional Conduct; Local Rule 83.51.7(a).

Moreover, Wanderling's extensive prior legal services to various entities and individuals associated with the Chicago Outfit remains of concern. The government is not interested in "prejudicing" Wanderling before the Court. Volpendesto Resp. at 4 n.9. The simple fact remains that Volpendesto has information concerning the activities of Outfit Member A and the Chicago Outfit, and Wanderling maintains legal ties with Outfit Member A and has represented multiple branches of this criminal organization. This fact alone heightens the risk of conflict going forward. *Cf. United States v. Locascio*, 6 F.3d 924, 932-33 (2d Cir. 1993) (affirming disqualification of John Gotti's defense attorney because, among other things, he served as "house counsel" for Gambino crime family and had previously represented government witness).

II.  **The Arrangements Proposed By Salerno and Wanderling Are Not Satisfactory to Remedy the Conflicts Posed By Their Participation in This Case.**

   A.  **Salerno and Wanderling Have Not Obtained a Waiver from CW4.**

While a defendant has a right to counsel of his choice, this right is not unfettered. A defendant is not permitted to hire an individual who is not a member of the bar as his attorney. *Wheat v. United States*, 486 U.S. 153, 159 (1988). By the same token, an attorney is not entitled to provide representation to a client when doing so would violate governing ethical and legal standards. *Id.* at 159-61. Salerno's and Wanderling's continued participation in this case would do just that. As discussed in the Motion, Rule 1.9 of the Illinois Rules of Professional Conduct and Local Rule 83.51.9 provide that an attorney "who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure." Motion at 15-16.

Neither attorney has obtained the consent of CW4, their former client. Defendant Polchan simply hopes the conflict will go away, by observing that the government has not yet brought charges that encompass the scope of Salerno's prior representation of CW4. Polchan Resp. at 4. While the defendant is entitled to indulge in wishful thinking, this Court's charge is different: it has "substantial latitude" to resolve conflict issues, even where an actual conflict has not yet arisen. *Wheat*, 486 U.S. at 163. For now it suffices to say that probable cause exists to charge Polchan with crimes that will encompass the scope of Salerno's prior representation of CW4, and that the government intends to bring such

charges. Salerno must be disqualified because his continued participation in this case will violate the rules of professional conduct.[3]

Wanderling contends for his part that he has never represented CW4. Yet, Wanderling concedes that he has appeared in open court on CW4's behalf in a State criminal proceeding (referred to as "stepping up"), a case in which Wanderling also represented CW4's son. Wanderling also volunteers[4] that he also discussed surveillance videos and the recovery of certain property from the Chicago Police Department with CW4, a fact which strongly suggests that Wanderling's legal efforts on behalf of CW4 had some measure of legal substance. In any event, neither Rule 1.9 of the Illinois Rules of Professional Conduct or Local Rule 83.51.9 have a materiality requirement in them, or a "minor work only during the prior representation" exception. Wanderling's prior representation is covered by these rules of conduct, and he has not obtained the requisite waiver.

Trials must be conducted in a manner consistent with the ethical standards of the profession. *Wheat*, 486 U.S. at 160. Salerno's and Wanderling's continued participation

---

[3] Indeed, a case Polchan cites in support of Salerno's continued participation in this case – *United States v. O'Malley*, 786 F.2d 786, 793 (7th Cir. 1986) – stands for the proposition that it is appropriate to disqualify an attorney when he fails to acquire a waiver from a former client. *See* Polchan Resp. at 3 (citing *O'Malley*, 786 F.2d at 790). A case cited by Volpendesto stands for the same proposition. Volpendesto Resp. at 9 (citing *United States v. Agosto*, 675 F.2d 965, 973-74 (8th Cir. 1982) (noting that consent of former client would be required before attorney could represent new client with conflicting interests)). CW4 opposes Salerno's and Wanderling's participation in this case in any way.

[4] One of the problems noted in the Motion with cases such as this is that the government and the Court cannot inquire into the matter itself without destroying the confidence, and therefore access to privileged information is presumed. *See United States v. Provenzano*, 620 F.2d 985, 1004-05 (3d Cir. 1980). Wanderling offers no contrary authority to that cited in the Motion.

in this case is not consistent with those standards, and they should be disqualified. *See United States v. Campbell*, 491 F.3d 1306, 1311-12 & n.6 (11th Cir. 2007) (affirming disqualification where prior client did not agree to representation, in reliance on local rules of professional conduct).

### B. The Waivers Obtained From Polchan and Volpendesto Should Be Rejected.

Unable to obtain the requisite waivers from CW4, the defendants have instead secured waivers from each other and from Outfit Member A. For the reasons discussed below, these waivers are also insufficient to remedy Salerno's and Wanderling's conflicts.

#### 1. The Waivers Were Obtained in Violation of the Local Rules.

The commentary to Local Rule 83.51.7 provides that "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent."

Alexander Salerno has represented at least three parties whose interests are adverse to defendant Polchan in this case: CW4, Outfit Member A and Samuel Volpendesto. CW4 and Volpendesto may both testify in a manner adverse to Polchan, and Polchan has information that will prejudice Outfit Member A, another client of Salerno's. Salerno also takes account of the possibility that Outfit Member A will be a future participant in this proceeding as well. Polchan Resp. at 8.

Wanderling arranged for Salerno's arrival at Outfit Member A's house several weeks ago, has represented Outfit Member A on a prior criminal matter, has represented

9

Outfit Member A on real estate matters (and may still do so to this day, we are not told), has acted as registered agent for businesses associated with Outfit Member A, has previously represented Polchan in a criminal matter, has previously represented CW4 in state court (albeit for a limited purpose), and has previously represented a string of businesses and individuals associated with the Chicago Outfit.

Both attorneys have so many serious actual and potential conflicts that a disinterested lawyer would conclude that both Polchan and Volpendesto should not agree to the representation by either attorney under the circumstances. For that reason, the waivers as to both defendants were improperly obtained under Local Rule 83.51.7.

### 2.  The Waivers Should Be Rejected in Order to Ensure the Fairness and Integrity of the Judicial Process.

For these same reasons, the waivers should not be accepted. As noted in the Motion, the Supreme Court has decided that this Court has substantial latitude to reject conflict of interest waivers in order to ensure the fairness and integrity of judicial proceedings. These proceedings must appear to be fair to all who observe them. In this instance, Salerno and Wanderling have numerous actual and potential conflicts. It is apparent that these attorneys represent a variety of interests, and that those interests may diverge from the best interests of the defendants in this case. Without the benefit of disclosing in full what relationships they have with Outfit Member A, Salerno and Wanderling have obtained waivers from both Polchan and Volpendesto. Under the circumstances, fairness and the integrity of the judicial process calls for disqualification. *See, e.g., United States v. Milsaps*, 157 F.3d 989, 996 (5th Cir. 1998) (affirming disqualification of defense

attorney who had previously served as attorney for government witness due to potential for "divided loyalties" – even where former client consented to representation).

With regard to the waivers they have proffered, the government also notes that the defendants cite a number of cases in support of the waivers that do not fully set forth the current state of the law in this area. For example, Volpendesto, citing *United States v. Cirrincione*, 780 F.2d 620, 628 (7th Cir. 1985), contends that the Court can reject a defendant's waiver only in "unique circumstances" when the sole basis for disqualification is a potential conflict. Volpendesto Resp. at 6. This case obviously has been supplanted by *Wheat* (decided in 1988) and has not been cited by the Seventh Circuit as authority since then. Volpendesto also cites a decision from outside this Circuit, *In re Grand Jury Proceedings*, 859 F.2d 1021, 1025 (1st Cir. 1988); although it was decided shortly after *Wheat* issued, it draws its language concerning disqualifications being a measure of "last resort" from a pre-*Wheat* case as well. Moreover, many of the cases cited by Volpendesto from within this Circuit pre-date *Wheat* as well.[5]

Additionally, the defendants cite several cases where conflict waivers have been upheld on appeal. *See* Volpendesto Resp. at 7. These cases do little to advance the defendant's cause. Merely because a reviewing court may ultimately conclude that multiple representation does not *require* automatic reversal of a conviction due to the execution of a

---

[5] Polchan, with reference to several hoary cases stretching back to 1956, contends that denying Polchan his right to counsel of his choice would amount to reversible error. *See* Polchan Resp. at 3. Of course, none of these cases take account of *Wheat* and the substantial latitude it affords to a district court's decisions in this regard. Disqualification of counsel in this case would be well within the Court's discretion.

waiver *does not* mean that honoring a waiver is the prudent course for a district court to take in the first instance. Indeed, there are few errors at trial that do call for *per se* reversal. For example, admission of an involuntary confession does not call for automatic reversal of a conviction on appeal, *see Arizona v. Fulminante*, 499 U.S. 279, 308-10 (1991), yet no one would be heard to argue that, as a general matter, it is a good idea to admit an involuntary confession into evidence. Yet this is the form of reasoning employed by the defendants: Salerno and Wanderling should be permitted to represent the defendants pursuant to the waivers they propose because it is not a "sure thing" that their representation of the defendants will result in reversible error on appeal. Accordingly, this is hardly a sound basis for arguing that this Court should honor the waivers obtained by Salerno and Wanderling. The proposed waivers should be rejected.[6]

### C.    The Proposed Use of Additional Attorneys Is Not a Sufficient Remedy for the Conflicts in This Case.

Both defendants propose the use of additional attorneys to overcome the conflicts faced by Salerno and Wanderling. Salerno proposes that attorney Damon Cheronis[7] will handle any cross-examination of CW4, Volpendesto and Outfit Member A, and that Salerno will not relate any privileged or confidential information to Cheronis in the preparation of his cross-examination of his three clients. Polchan Resp. at 4-5, 8. Wanderling

---

[6]    As the Supreme Court itself has noted, appellate courts have from time to time entertained conflict claims even though a waiver was obtained. *Wheat*, 486 U.S. at 161-62.

[7]    Mr. Cheronis recently acted as one of the attorneys for corrupt police officer and Chicago Outfit associate Anthony "Twan" Doyle in *United States v. Calabrese*, No. 02 CR 1050 (N.D. Ill.) (Zagel, J.).

suggests obtaining "backup counsel" to cross-examine witnesses where there may be a conflict. Volpendesto Resp. at 10.

This proposed procedure does nothing to overcome the fact that both attorneys have not obtained CW4's consent to represent another party whose interests are materially adverse to his. This procedure therefore does not address a foundational problem with their continued participation in this case.

Moreover, the use of Cheronis to conduct cross-examinations on behalf of Polchan with respect to Salerno's three clients (CW4, Outfit Member A and Volpendesto), and the use of another attorney to conduct cross-examinations on behalf of Volpendesto for Wanderling's clients (CW4, Outfit Member A and Polchan) is still not a sufficient remedy, putting aside the fact that the attorneys are still in violation of Rule 1.9 of the Illinois Rules of Professional Conduct and Local Rule 83.51.9 as they apply to CW4. The divided loyalties Salerno and Wanderling have will have repercussions beyond the mere act of cross-examination of one witness. Both attorneys will likely participate in the formulation of defense strategy. Defense strategies will presumably include discussions of how to discredit CW4, who will offer key evidence of guilt concerning both Polchan and Volpendesto. Furthermore, in formulating defense strategy, both attorneys will be hampered by not being able to properly consider defense strategies that implicate their former respective clients. Both attorneys will participate in opening statements and closing arguments – during which they may not improperly comment about their former clients, including CW4. Other witnesses will be examined, and during such examinations, efforts might be made to undermine CW4 – but not by current defense counsel. And both attorneys will be faced with

the temptation of utilizing information gathered during the course of their prior representations to aid their clients during this case. Indeed, recent efforts to minimize the extent of counsels' prior representation of both Outfit Member A and Volpendesto in recent filings is suggestive of the temptation counsel will face to overstep boundaries as this case progresses. It is unrealistic to think, under the circumstances of this case, that bringing an additional attorney on board for purposes of cross-examination will suffice to ensure the fairness of the trial to all parties, including the defendants and CW4.

In support of this proposal, Polchan contends that this procedure was "sanctioned" by the Seventh Circuit in *United States v. Micke*, 859 F.2d 473 (7th Cir. 1988). This is incorrect. In *Micke*, the defendant complained on appeal that the district court improperly *prevented* an attorney with a conflict from conducting examination of *any* witnesses or making any argument. In fact, the district court had only permitted the attorney with the conflict to sit at counsel table and assist in that fashion. *Id.* at 480. The Seventh Circuit concluded that the district court was within its authority to prevent an attorney from any further participation in the trial due to the conflicts posed. *Id.* at 480-81. The Seventh Circuit did not "expressly sanction" the procedure the defendants now proposes; it merely rebuffed a claim of error concerning the denial of the right to counsel of choice. Volpendesto's citation to *United States v. Britton*, 289 F.3d 976, 983 (7th Cir. 2002), is also not on point. In that case, the defense attorney represented a government witness while employed at another firm. The nature of the prior representation was never discussed; it was not disclosed if it was a criminal matter. Moreover, the case does not reflect that the former

14

client objected to the new representation, and finally, the attorney involved did not have any independent impeachment material derived from the former representation.

Finally, Polchan also contends that he has received independent advice from attorney William Stanton on his options as it relates to cooperation with the government, and that this is sufficient to remedy the conflicts Salerno labors under. Polchan Resp. at 9. Counsel with the government confirmed today that Stanton has consulted with Polchan concerning his options, but will have no future role in representing Polchan.[8] Stanton's brief encounter with Polchan was not sufficient to cure the conflicts in this case. Stanton has not been privy to any discovery, is certainly not familiar with the scope and nature of this case, and as far as the government knows, is not privy to the nature of the conflicts Salerno and Wanderling have. It thus appears that, for all intents and purposes, Salerno remains in firm control of the defense of Polchan and all decision-making.[9]

## **CONCLUSION**

For the reasons set forth in the Motion and herein, Salerno and Wanderling should be disqualified.

---

[8] This understanding appears to be at odds with the statement made in the waiver appended to Polchan's Response, which suggested an ongoing role for an independent attorney. *See* Polcan Resp., Waiver of Conflicts of Interest ¶ 7. The government also notes that Polchan's affidavits are unsigned by Polchan, but assumes this is merely a clerical oversight.

[9] Though Mr. Stanton is surely an able young attorney, the government notes that Salerno has been a member of the bar for approximately twenty-two years, whereas Stanton, the attorney selected as independent counsel for Polchan to advise him on "all potential trial strategies and the consequences/advantages of cooperating with the government" and obtain a waiver from Polchan was recently admitted to the bar of this Court, and does not appear to be a member of the federal trial bar.

WHEREFORE, the government respectfully requests that the Court enter an order (i) granting the Motion; and (ii) granting such other and further relief as may be just and proper.

Dated:    Chicago, Illinois
          September 12, 2008

                                Respectfully submitted.
                                PATRICK J. FITZGERALD
                                United States Attorney

By:   /s/ Amarjeet S. Bhachu   6236711
       T. MARKUS FUNK
       AMARJEET S. BHACHU
       Assistant United States Attorneys
       219 South Dearborn Street
       Fifth Floor
       Chicago, Illinois 60604
       (312) 469-6212

**CERTIFICATE OF SERVICE**

        Amarjeet S. Bhachu, an Assistant United States Attorney assigned to the instant matter, hereby certifies that the attached GOVERNMENT'S REPLY IN SUPPORT OF MOTION SEEKING DISQUALIFICATION OF DEFENSE COUNSEL DUE TO CONFLICTS PRESENTED BY THEIR REPRESENTATION OF THE DEFENDANTS was served on September 12, 2008, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

    /s/ Amarjeet S. Bhachu    6236711
AMARJEET S. BHACHU
Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604